United States District Court
Southern District of Texas
**ENTERED**
September 21, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID GARZA, § | | |
| # 01633521, § | | |
| § | | |
| Plaintiff, § | | |
| v. § | | CIVIL ACTION NO. 4:18-4387 |
| § | | |
| LORIE DAVIS, *et al*., § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Garza, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brings this civil rights suit alleging that TDCJ officials denied him adequate medical care. Garza filed an initial complaint, an amended complaint, and a more definite statement (Dkt. 1; Dkt. 6; Dkt. 12). The Office of the Attorney General ("OAG") as *amicus curiae* submitted a *Martinez* report and related exhibits (Dkt. 20, Dkt. 21),[1] which the Court converted to a motion for summary judgment (Dkt. 28). Garza has responded (Dkt. 25, Dkt. 30), and the motion is ripe for decision. After reviewing the pleadings, the briefing and evidence submitted, the applicable law, and all matters of record, the Court concludes that summary judgment should be **granted** for Defendants and that Plaintiff's claims should be **dismissed** with prejudice. In addition, Plaintiff's motions for leave to amend (Dkt. 29, Dkt. 41), his motions to appoint counsel (Dkt. 36, Dkt. 37), and his motions for injunctive relief (Dkt.

---

[1] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987); *Cay v. Estelle*, 789 F.2d 318, 323 & n. 4 (5th Cir.1986) (discussing the utility of a *Martinez* report).

27, Dkt. 33) will be **denied**.

I.      BACKGROUND

Garza alleges that Defendants denied him adequate medical care from 2016-2018. He states that he has a foot deformity that makes it painful to walk or stand for long periods and that he requires medical boots, which TDCJ provided only after a 9-year delay (Dkt. 12, at 1-2; Dkt. 25, at 3).[2] He also alleges that he has had two major back surgeries and suffers serious back pain on some days (Dkt. 12, at 1). He states that his challenges are more difficult because he is legally blind and handicapped (*id.* at 2).

At all times relevant to this lawsuit, Garza has been incarcerated at the Estelle Unit. Garza sues four Defendants: Lorie Davis, the former director of TDCJ; Troy Selman, a former warden at the Estelle Unit; Betty Williams, M.D., a medical provider at the Estelle Unit; and Khari Mott, the business manager for the clinic at the Estelle Unit. He alleges that Williams did not adequately address his need for pain medications, and that Mott interfered with his medical care and improperly handled some of his administrative grievances. He claims that Davis and Selman are responsible to provide adequate medical care to all inmates in their custody, including Garza.

The OAG's *Martinez* report attaches Garza's relevant medical records, grievance records, and an affidavit from Glenda Adams, M.D., M.P.H., a physician consultant for the University of Texas Medical Branch Correctional Managed Care. Adams' affidavit,

---

[2]     Throughout this memorandum opinion, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case-filing ("ECF") system.

prepared after reviewing Garza's pleadings, grievances, and medical records, states that Garza has osteoarthritis, which causes chronic pain and is aggravated by obesity and age. She also states that he suffers from "keratoconus with markedly decreased visual acuity but not complete blindness" (Dkt. 21-2, at 3). She avers that, since his arrival at TDCJ, Garza has been seen in chronic care clinics "at least annually," and has been seen for acute problems "upon request" (*id*.). Garza is followed by the Brace and Limb Clinic and by Assistive Disability Services ("ADS") (*id*. at 4). His health classification form ("HSM-18") dated December 18, 2015, reflects medical restrictions including a lower bunk assignment, a limitation to sedentary work assignments, and limits on lifting and other physical activity (*id*. at 3-4; *id*. at 22 (Exhibit 3)). Garza also has been issued medical passes for additional needs not covered by the HSM-18, including passes for contact lenses, compression stockings, an orthopedic cane, medical shoes, shower shoes, and a special diet (*id*. at 31-43 (Exhibit 5)). He has passes related to his disabilities, including showering accommodations, a reading magnifier, a talking watch, a cane to identify him as visually impaired, and delivery of his meals (*id*.). Regarding Garza's medications for his chronic pain, Adams avers that Garza has been supplied with acetaminophen; non-steroidal anti-inflammatory drugs ("NSAIDs") such as naproxen; nortriptyline (Pamelor); and duloxetine (Cymbalta) (*id*. at 4).

Adams recounts that Garza had only one clinic encounter with Williams, which was on December 12, 2016 (*id*.; *id*. at 56-64 (Exhibit 8)). At the appointment with Williams, Garza complained that his new medical footwear, which he had received approximately two weeks prior, hurt his feet (*id*. at 61). He requested additional

equipment and medication, as well as a medical "unassignment" to excuse him from work duties (*id.* at 61-62). Williams determined that Garza's limitation to sedentary work was adequate for his medical needs, but facilitated his requests for medical supplies. She also ordered pain medications for Garza, in particular, acetaminophen and a 30-day prescription for naproxen. Williams' notations in the medical records reflect that she advised Garza against long-term use of naproxen and other NSAIDs due to an "increased risk of serious cardiovascular thrombotic events, Myocardial infarction and Stroke, which can be fatal," as well as increased risk of serious gastrointestinal events or kidney failure (*id.* at 62).[3]

Garza disputes Adams' statements and claims that, although Adams "makes it sound like [he] has it easy," it took him years of fighting for his passes before he got them (Dkt. 25, at 9). He also denies that he has been issued any medical restrictions, states that medical supplies referenced by Adams were ineffective or not received, and alleges that his medical records have been improperly altered (*id.* at 9-10, 13).

Regarding his medications, Garza states that, for a period of approximately three months at an unspecified time, a medical provider named Barber prescribed him naproxen, which apparently was more effective for pain relief (*id.* at 11; Dkt. 30, at 3).

---

[3] Although Williams did not have additional clinic visits with Garza, she was involved in his medical care at other times and assisted other providers with his care. In August 2017, Williams ordered allergy medications and medical equipment (*id.* at 5; *id.* at 65-68 (Exhibit 9)); on December 24, 2017, she verbally authorized a renewal of his blood pressure medication (*id.* at 5-6; Dkt. 21-3, at 3 (Exhibit 10)); in April and May 2018, she facilitated his medication refills and clinic visits (Dkt. 21-2, at 6; Dkt. 21-3, at 8 (Exhibit 11); *id.* at 17 (Exhibit 12)); in August 2018, she provided verbal orders for treatment of a boil (Dkt. 21-2, at 7; Dkt. 21-3, at 33-34 (Exhibit 13); *id.* at 37-38 (Exhibit 14)); and in March 2019, she referred Garza to optometry (Dkt. 21-2, at 7; Dkt. 21-3, at 41 (Exhibit 15)).

However, he appears to complain that the naproxen was not sufficiently renewed and that, in December 2016, Williams limited his prescription to 30 days. He disagrees with Williams' opinion about the dangers associated with long-term use of naproxen and other NSAIDs.[4]

Adams provides her professional opinion that Williams acted in good faith based on "the information available to her[,] including the FDA's repeated warnings on the potential dangers of chronic NSAID use," that she did not refuse to treat Garza's chronic pain, and that the care Garza received was "well within the standard of care" (Dkt. 21-2, at 7, 9). Garza acknowledges that Williams took care of most of his medical needs on December 12, 2016, and that she wrote him a 30-day prescription for naproxen, but nevertheless alleges that she refused to give him adequate pain medication (Dkt. 25, at 11-12; Dkt. 30, at 3).

Regarding Mott, Adams states that, as the business manager for inpatient operations, Mott held a position with "strictly administrative" duties and was not responsible for medical care at the Estelle Unit as Garza claims (Dkt. 21-2, at 8). She avers that a person in Mott's position "does not treat patients and cannot dictate clinical decisions," including decisions regarding pain medications (*id*. at 9). Garza responds that

---

[4] *See* Dkt. 25, at 13 (alleging that if Williams "saved me from a potentially dangerous medication[], why didn't anyone save me from [another medication] they pulled of[f] the market[?]" and stating, "[it must] be because of the kickbacks doctors get when they promote a drug"). As for the other medications discussed in Adams' affidavit, Garza agrees that he takes Cymbalta but states that he suspects, based on a Texas Monthly article, that "TDCJ is in the habit of giving psych[iatric] medications" to inmates to "have them addicted to drugs" (*id.* at 2). He explains that he took Pamelor in 2014 for numbness due to nerve damage, but that it caused side effects and was discontinued after he complained (*id.*). He appears to acknowledge that he receives acetaminophen but complains that Tylenol and "brand-name" drugs in general are not dispensed at the Estelle Unit (*id*. at 12).

he never requested a refill or renewal of medication from Mott, but that Mott frequently responded to his grievances regarding medications, making decisions that improperly "overrode" the physicians Garza had seen before his incarceration. *See* Dkt. 25, at 5 (alleging that Mott "overrode every doctor [Garza had] ever seen out there in the 'free' world" when Mott stated in response to an administrative grievance that Garza's medical record reflected no medical need for a "single cell" or a medical "unassignment"); *id*. at 12 (alleging that Mott is involved in all medical grievances filed at the Estelle Unit).

The *Martinez* report also includes multiple grievances filed by Garza that are relevant to his claims in this lawsuit, including grievances complaining about Williams, Mott, and denied medications (Dkt. 21-1). Garza's response points out some alleged discrepancies in the grievance records and provides additional grievances, including some from 2014 that, although too old to be relevant in this lawsuit, he submits as support for what he describes as a pattern of denied medical care (Dkt. 25-1).

In addition to his response to the *Martinez* report, Garza has submitted multiple other filings that raise issues unrelated to his claim regarding denied medication, including declarations regarding discrimination and mail issues (Dkt. 31; Dkt. 38; Dkt. 39); motions for injunctive relief related to his housing assignment (Dkt. 27; Dkt. 33); and motions for leave to amend his pleadings (Dkt. 29; Dkt. 41). He also filed motions for appointment of counsel (Dkt. 36; Dkt. 37).

## II. STANDARDS OF REVIEW

### A. The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is

required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b), § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted). "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

    B.    **Summary Judgment—Rule 56**

The Court has converted the *Martinez* report to a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present

summary judgment evidence") (internal citation and quotation marks omitted).

### III.   ANALYSIS

#### A.   Medical Care Claims

Garza alleges that Defendants have not provided him adequate medical care in 2016-18, complaining in particular that they denied him a specific pain medication, naproxen. He brings his claim under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Because the plaintiff was, at all relevant times, a convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment's prohibition against "cruel and unusual" conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

To prevail on an Eighth Amendment claim, a plaintiff must demonstrate that the defendant exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment standard has both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019); *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir.

2006). A plaintiff must show that the defendant was aware of facts from which the inference could be drawn of a substantial risk of serious harm; that the defendant subjectively drew the inference that the risk existed; and that the defendant disregarded the risk. *Cleveland*, 938 F.3d at 676. Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). A significant risk that the official "should have perceived but did not" is insufficient for a constitutional violation. *Cleveland*, 938 F.3d at 676. Even negligence or medical malpractice do not rise to the level of "deliberate indifference" necessary to show a constitutional violation. *Rogers*, 709 F.3d at 410. A defendant's personal involvement is an essential element of a civil-rights cause of action, meaning that there must be an affirmative link between the injury and a defendant's conduct. *See Delaughter v. Woodard*, 909 F.3d 130, 136-37 (5th Cir. 2018).

Garza alleges that Williams did not adequately address his need for pain medications, and that Mott interfered with his medical care and improperly handled some of his administrative grievances. The records provided with the *Martinez* report show that Garza received regular medical care during the time in question, including visits to chronic care clinics, the Brace and Limb Clinic, and ADS (Dkt. 21-2, at 3-4 (citing medical records)). He also had medical restrictions and passes during the relevant time that allowed him a cane, special shoes, a talking watch, a reading magnifier, and special accommodations for meal service and showering (*id*. at 22 (Exhibit 3); *id*. at 31-43

(Exhibit 5)). The records further demonstrate that Garza had regular prescriptions for pain medication, and Garza acknowledges that he received short-term prescriptions for naproxen. He maintains, however, that his care was inadequate, apparently because he did not receive long-term prescriptions for naproxen (Dkt. 25, at 11; Dkt. 30, at 3).

The medical records show that Williams wrote Garza a 30-day prescription for naproxen in her single clinical encounter with him on December 12, 2016 (Dkt. 21-2, at 4-5; *id*. at 62 (Exhibit 8)). She also ordered some medical equipment and acetaminophen (*id*. at 62). The records also demonstrate that Williams exercised her professional judgment when making the decision to supply Garza with only a short-term prescription for naproxen, and explicitly stated her reason in her clinical notes.[5] Garza fails to demonstrate a genuine issue of material fact as to whether Williams "subjectively drew the inference" that Garza faced a substantial risk of serious harm from denial of a longer-term prescription for naproxen, or that Williams disregarded any such risk. *See Cleveland*, 938 F.3d at 676. Garza's disagreement with Williams' medical judgment regarding adequate or safe medications is inadequate to show that she was deliberately indifferent to his serious medical need. *See Estelle*, 429 U.S. at 107 (explaining that the decision whether to provide a particular type of treatment "is a classic example of a matter for medical judgment"); *Rogers*, 709 F.3d at 410. In fact, even if Garza could successfully show that Williams acted negligently when writing or refusing to write a prescription, such a claim would not suffice under the deliberate indifference standard.

---

[5] *Id.* (citing an "increased risk of serious cardiovascular thrombotic events, myocardial infarction and Stroke, which can be fatal," as well as increased risk of serious gastrointestinal events or kidney failure associated with long-term use of NSAIDs).

*See id.*; *Hinojosa*, 807 F.3d at 665. His conclusory allegations that Williams in fact denied him medical restrictions or accommodations (Dkt. 25, at 10) are in conflict with the competent evidence in the *Martinez* report and are insufficient to defeat summary judgment. *See Jones*, 678 F.3d at 348. In short, the summary judgment record does not contain evidence supporting Garza's claim that Williams was subjectively aware of a substantial risk to him and responded to the risk with deliberate indifference.

As for Mott, the *Martinez* report contains evidence that he was not a medical provider, but rather the business manager for the clinic, and therefore did not treat patients or make decisions regarding medications or other treatments (Dkt. 21-2, at 8-9). Garza does not directly dispute this evidence, although he complains that Mott frequently responded to his medical grievances (Dkt. 25, at 3, 5, 12). He therefore has not demonstrated a genuine issue of material fact for his claim that Mott denied him necessary medications. To extent he bases his constitutional claim on a complaint that Mott denied Garza's administrative grievances, or signed off on the denial of the grievance, his claim fails. A prisoner has no constitutional interest in having grievances resolved to his satisfaction. *Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir. 2014); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).

Finally, Garza brings claims against Davis and Selman, alleging that both are responsible for providing adequate medical care to inmates in their custody. *See* Dkt. 25, at 5 (stating that he named the warden as a defendant because his medical complaints happened "under the warden's watch"). A supervisory official may be liable under §1983 only if he "affirmatively participates in the acts that cause the constitutional deprivation"

or "implements unconstitutional policies that causally result in the injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). In this case, Garza does not allege that either Davis or Selman was personally involved in any alleged violation of his Eighth Amendment rights. Indeed, as stated above, he has failed to demonstrate a genuine issue of material fact as to his Eighth Amendment claim for denial of medical care.

Given the extensive care documented by the *Martinez* report, Garza's claim that he was denied treatment in violation of his constitutional rights lacks merit. *See Gobert*, 463 F.3d at 346-47 & n. 24 (multiple examinations and administered medications may rebut allegations of deliberate indifference under Eighth Amendment); *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim under Eighth Amendment where extensive medical records documented that the prisoner was not denied medical attention). Garza fails to demonstrate a genuine issue of material fact as to a constitutional violation in connection with his medical care in TDCJ. Summary judgment therefore is granted for Defendants.

### B. Motions for Leave to Amend

After the OAG filed its *Martinez* report and the Court converted the report to a motion for summary judgment, Garza filed two motions for leave to amend his complaint (Dkt. 29, Dkt. 41). Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). A court must have a "substantial reason" to deny a request for leave to amend. *Stem v. Gomez*, 813 F.3d 205, 215 (5th Cir. 2016). Leave to amend is not automatic, and the decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Pervasive Software Inc.*

*v. Lexware GmbH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012) (internal citation and quotation marks omitted). A district court "should consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466-67 (5th Cir. 2012) (quoting *In re Southmark*, 88 F.3d 311, 315 (5th Cir. 1996)). "Futility" in the context of a Rule 15 motion to amend means that the proposed amended complaint would fail to state a claim upon which relief could be granted. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

When a plaintiff seeks to supplement the pleadings and bring a claim based on events that happened "after the date of the pleading to be supplemented," the request is governed by Rule 15(d). *Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 202 (5th Cir. 2012). Whereas Rule 15(a) provides that leave to amend should be "freely given," the text of Rule 15(d) contains no such provision. *Burns v. Exxon*, 158 F.3d 336, 343 (5th Cir. 1998). Nevertheless, "the discretion exercised in deciding whether to grant leave to amend is similar to that for leave to file a supplemental pleading." *Lewis v. Knutson*, 699 F.2d 230, 239 (5th Cir. 1983) (citing 6 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1504 (1971)); *see Lowrey v. Beach*, 708 F. App'x 194, 195 (5th Cir. 2018).

Both of Garza's motions to amend seek to substitute the current warden at the Estelle Unit for Selman, the warden originally named. These requests to amend are denied as futile because, for the reasons stated above, Garza fails to demonstrate a genuine issue of material fact as to any Eighth Amendment claim against the warden.

*See Marucci*, 751 F.3d 3 at 378.

Garza's motions also seek to add new defendants and to bring new claims. His first motion, which was filed in October 2019, seeks to add claims against an optometrist and against an ADS caseworker, neither of whom were previously named as defendants (Dkt. 29). His second motion, filed in August 2020, seeks to add new defendants and to bring new claims regarding property rights, religious discrimination, and the proper length and operation of the sentence he currently is serving (Dkt. 41). These proposed claims appear to pertain to dates outside the 2016-18 period relevant to his original claims. However, whether assessed under Rule 15(a) or Rule 15(d), the allegations are not germane to Garza's original claims.[6] Moreover, Garza does not justify his delay in seeking leave to amend until after the Court converted the *Martinez* report to a dispositive motion. His requests to amend or supplement his pleadings therefore are denied. *See Marucci*, 751 F.3d at 378; *Haggard*, 668 F.3d at 202; *Lowrey*, 708 F. App'x at 195. Garza may bring a separate lawsuit to pursue any new claims, if warranted.

### C. Motions for Appointment of Counsel

Garza filed two motions for appointment of counsel to assist him in litigating this case (Dkt. 36, Dkt. 37), citing his incarceration, indigence, and visual impairment. There is no automatic constitutional right to appointment of counsel in civil rights

---

[6] Garza also has submitted declarations and other filings that appear to complain that TDCJ officials have thrown away his legal work, have caused problems with his incoming and outgoing mail, and have subjected him to discrimination and retaliation (Dkt. 31; Dkt. 38; Dkt. 39). These allegations are not relevant to the medical claims in this lawsuit. The Clerk previously provided Garza with a form complaint to initiate a new civil rights suit, if warranted (Dkt. 32).

cases. *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007); *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). A district court may appoint counsel to advance the proper administration of justice in exceptional circumstances and where an indigent litigant has colorable claims that will not receive a meaningful hearing without counsel. *See* 28 U.S.C. § 1915(e)(1); *Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015); *Ulmer*, 691 F.2d at 213. Because the Court has dismissed Garza's claims, his motions for appointed counsel will be denied as moot.

### D. Motions for Injunctive Relief

Garza filed two motions for injunctive relief claiming that he is entitled to ground floor housing based on his medical condition. *See* Dkt. 27 (motion filed in October 2019 seeking order enjoining Defendants from placing Garza in housing not on ground floor due to his handicap); Dkt. 33 (motion filed in March 2020 seeking injunctive relief for ground floor housing assignment). A plaintiff seeking a preliminary injunction must establish "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Jones v. Texas Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (citations omitted).

Although Garza appears to request injunctive relief from Defendants Davis, Selman, Williams, and Mott, he does not allege that any of the four Defendants were personally involved in his housing placement. Therefore, he fails to demonstrate a substantial likelihood of success on the merits. Additionally, Adams' affidavit states that

Garza was offered ground floor housing on April 15, 2016, but declined the assignment (Dkt. 21-2, at 4; Dkt. 21-2, at 25 (Exhibit 4)), which weighs against a finding of irreparable injury. Garza's motions for injunctive relief (Dkt. 27, Dkt. 33) are denied.

## IV.     CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1. Summary judgment is granted for Defendants.

2. All of Garza's claims are dismissed with prejudice.

3. Garza's motions for leave to amend (Dkt. 29, Dkt. 41) are denied.

4. Garza's motions to appoint counsel (Dkt. 36, Dkt. 37) are denied as moot.

5. Garza's motions for an order to show cause (Dkt. 27) and for a preliminary injunction (Dkt. 33) are denied.

6. All other pending motions, if any, are denied as moot.

The Clerk will provide a copy of this order to the parties and to counsel for *amicus curiae*.

SIGNED at Houston, Texas, this 21st day of September, 2020.

                                                                                           _George C. Hanks Jr._
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE